## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONALD HORTON,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:11-cv-090
Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 20) and the Commissioner's memorandum in opposition. (Doc. 23).

**I. Procedural Background**

Plaintiff filed an application for DIB in June 2006, alleging disability since December 1, 1981, due to lumbar back problems, a sleeping disorder, high blood pressure, sinus problems, and diabetes. (Tr. 154). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Donald Smith. Plaintiff, proceeding pro se, appeared and testified at the ALJ hearing. On February 25, 2009, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A) (DIB). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

7. Born [in] . . . 1949, the [plaintiff] was 37 years old on the date last insured, which is defined as a "younger individual age 18-49" (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not a material issue in this case. For purposes of the sequential evaluation, it is assumed that the [plaintiff's] past relevant work was unskilled.

10. Even if the sequential evaluation proceeded to step five, there are a significant number of jobs the [plaintiff] could have performed through the date last insured, considering his age, education, work experience, and residual functional capacity (20 CFR 404.1569 and 404.1569a).

10. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from December 1, 1981, the alleged onset date, through December 31, 1986, the date last insured (20 CFR 404.1520(f) and (g)).

(Tr. 13-16).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

4

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 1986.
>
> 2. The [plaintiff] did not engaged in substantial gainful activity during the period from his alleged onset date of December 1, 1981 through his date last insured of December 31, 1986 (20 CFR 404.1571 *et seq.*).
>
> 3. Through his date last insured, the [plaintiff] had the following severe impairments: residuals of a lumbar strain and degenerative lumbar disc disease (20 CFR 404.1521 *et seq.*).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).
>
> 6. Through the date last insured, the [plaintiff] was capable of performing his past relevant work as a "kitchen aid," as he performed it. This work did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR 404.1565).

> MRI done in 2002 showed mild to moderate degenerative disc disease and a herniated fragment at L5-S 1 on the left side (Tr. 252-253).
>
> In October, 1983, the Veterans Administration gave Mr. Horton a 10% disability rating due to his back (Tr. 287). This was increased to 100% in 2007 (Tr. 266).
>
> On testing done in 2008, Mr. Horton scored 51 on a PTSD symptoms checklist, clinically significant for PTSD (Tr. 296-297). He scored a 48 on this in July, 2009 (Tr. 314).

(Doc. 20 at 2).

Plaintiff raises three assignments of error: (1) "the ALJ erred when he failed to find the depression and the PTSD before 1986" (Doc. 20 at 3); (2) the ALJ erred "when he failed to note the V.A. [Veterans Administration] disability rating and erred when he found the ability to perform medium work with the low back and leg pain and the questionable radiculopathy" (Doc. 20 at 4); and (3) the ALJ erred "in not using a vocational expert to determine if Mr. Horton could do [his] past work with the two hours of walking required on this job." (Doc. 20 at 5).[2]

### 1. The ALJ's severity finding is supported by substantial evidence.

Plaintiff contends "the ALJ erred when he failed to find the depression and the PTSD before 1986." (Doc. 20 at 3). The Court construes this assignment of error as alleging the ALJ erred by not finding plaintiff's depression and PTSD to be severe impairments during the relevant time frame of December 1, 1981, the alleged onset date, through December 31, 1986, the date last insured. Plaintiff cites to a single record showing a diagnosis of depression in August 1984 and records showing a diagnosis of PTSD in 2008 and 2009, allegedly related to the death of plaintiff's father in 1982. (Doc. 20 at 3, citing Tr. 247 and Tr. 280, 296-97, 305, 311, 314).

---

[2] As plaintiff notes in his statement of errors, he was not represented at his hearings before the ALJ and, therefore, the ALJ owed him a special duty to ensure that a full and fair administrative record was developed. *See Lashley v. Sec. of HHS*, 708 F.2d 1048, 1051 (6th Cir. 1983). The Court is mindful of this duty as it reviews plaintiff's assignments of error in this case.

6

> MRI done in 2002 showed mild to moderate degenerative disc disease and a herniated fragment at L5-S 1 on the left side (Tr. 252-253).
>
> In October, 1983, the Veterans Administration gave Mr. Horton a 10% disability rating due to his back (Tr. 287). This was increased to 100% in 2007 (Tr. 266).
>
> On testing done in 2008, Mr. Horton scored 51 on a PTSD symptoms checklist, clinically significant for PTSD (Tr. 296-297). He scored a 48 on this in July, 2009 (Tr. 314).

(Doc. 20 at 2).

Plaintiff raises three assignments of error: (1) "the ALJ erred when he failed to find the depression and the PTSD before 1986" (Doc. 20 at 3); (2) the ALJ erred "when he failed to note the V.A. [Veterans Administration] disability rating and erred when he found the ability to perform medium work with the low back and leg pain and the questionable radiculopathy" (Doc. 20 at 4); and (3) the ALJ erred "in not using a vocational expert to determine if Mr. Horton could do [his] past work with the two hours of walking required on this job." (Doc. 20 at 5).[2]

### 1. The ALJ's severity finding is supported by substantial evidence.

Plaintiff contends "the ALJ erred when he failed to find the depression and the PTSD before 1986." (Doc. 20 at 3). The Court construes this assignment of error as alleging the ALJ erred by not finding plaintiff's depression and PTSD to be severe impairments during the relevant time frame of December 1, 1981, the alleged onset date, through December 31, 1986, the date last insured. Plaintiff cites to a single record showing a diagnosis of depression in August 1984 and records showing a diagnosis of PTSD in 2008 and 2009, allegedly related to the death of plaintiff's father in 1982. (Doc. 20 at 3, citing Tr. 247 and Tr. 280, 296-97, 305, 311, 314).

---

[2]As plaintiff notes in his statement of errors, he was not represented at his hearings before the ALJ and, therefore, the ALJ owed him a special duty to ensure that a full and fair administrative record was developed. *See Lashley v. Sec. of HHS*, 708 F.2d 1048, 1051 (6th Cir. 1983). The Court is mindful of this duty as it reviews plaintiff's assignments of error in this case.

6

In determining that plaintiff was not disabled prior to December 31, 1986, the date last insured, the ALJ noted that plaintiff did not allege any mental disorders when he applied for disability benefits. The ALJ determined that plaintiff did not have any severe mental impairments on or before his date last insured. (Tr. 14). The ALJ noted that plaintiff was diagnosed with PTSD in November 2008 and that this was the first clear documentation of PTSD in the record. (*Id.*, citing Tr. 280). The ALJ also stated that although plaintiff had apparently applied for and was denied veteran's benefits for service-connected PTSD in 2002, there are no medical records corroborating PTSD treatment in the 1980s. (Tr. 14, citing Tr. 146).

To obtain DIB benefits, plaintiff must establish that the "onset of disability" was prior to December 31, 1986, the date his insured status expired, and that his disability lasted for a continuous period of twelve months. 42 U.S.C. § 423(d)(1)(A). *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Gibson v. Sec'y of H.E.W.*, 678 F.2d 653 (6th Cir. 1982). Post-insured status evidence of new developments in a claimant's condition is generally not relevant. *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981). Such evidence may be examined, however, when it establishes that the impairment existed continuously and in the same degree from the date plaintiff's insured status terminated. *See Johnson v. Sec'y of H.E.W.*, 679 F.2d 605 (6th Cir. 1982). *See also King v. Sec'y of HHS*, 896 F.2d 204, 205-06 (6th Cir. 1990) (post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of date last insured).

The ALJ reasonably determined that neither depression nor PTSD were severe impairments prior to the expiration of plaintiff's insured status on December 31, 1986. A severe impairment is one that significantly limits the physical or mental ability to perform basic work

7

activities. 20 C.F.R. § 404.1521. Here, plaintiff's diagnosis of depression on a single occasion in 1984, without any related evidence showing functional restrictions, does not denote significant limitations on the ability to perform basic work activities. *See Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (relevant consideration in disability case is not claimant's diagnoses, but functional limitations caused by impairments). In addition, there is no medical evidence relating plaintiff's PTSD back to his date last insured in December 1986. The only medical evidence cited by plaintiff on PTSD is from 2008 and 2009, and there is no medical opinion or evidence suggesting that PTSD was a severe impairment more than 20 years prior to this evidence. Accordingly, the ALJ's decision finding no severe mental impairments prior to the date last insured is supported by substantial evidence.

**2. The ALJ did not fail to consider plaintiff's VA disability rating or "questionable" radiculopathy.**

Plaintiff's second assignment of error asserts the ALJ erred "when he failed to note the V.A. disability rating and erred when he found the ability to perform medium work with the low back and leg pain and the questionable radiculopathy." (Doc. 20 at 4). Plaintiff states he was given a 10% VA disability rating in 1983 (Tr. 287), and that the rating was increased to 100% in 2007. (Tr. 140). Plaintiff argues the ALJ failed to consider his disability rating in assessing his DIB claim in violation of Social Security Ruling (SSR) 06-3p, 2006 WL 2329939.

The Social Security Regulations provide that "[a] decision by . . . any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us." 20 C.F.R. § 404.1504. Nevertheless, as the ALJ must consider all

8

the evidence in the record in making a disability determination, he must consider disability decisions made by other governmental agencies like the VA and explain the consideration given to such evidence. *See* SSR 06-3p, 2006 WL 2329939 (evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered). Likewise, the Sixth Circuit has recognized that disability decisions by other governmental agencies must be taken into account, even though such decisions are not binding on the Social Security Administration. *See Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985) (reversing SSA denial of benefits, noting it was "strange" the ALJ had the "audacity" to find the claimant not disabled for purposes of social security benefits after he was already found disabled for the purposes of Black Lung and Workers' Compensation benefits); *see also King v. Comm'r of Soc. Sec.*, 779 F. Supp.2d 721, 725 (E.D. Mich. 2011) (and cases cited therein).

In this case, contrary to plaintiff's contention, the ALJ did not fail to note plaintiff's disability rating in assessing his claim for disability. Specifically, the ALJ's decision states that plaintiff "initially received a 10% disability rating from the Board of Veterans Appeals due to residuals of a lumbar strain with degenerative disc disease. This rating did not increase until 1995 (Exhibits 6F/12, 8F/2-5)," implying that plaintiff's back impairment for the pre-1986 time period was not so limiting so as to preclude medium work activity. (Tr. 15, citing Tr. 277, Tr. 285-288 [showing 10% rating in 1981 for residuals of lumbar strain, which was increased to 60% rating in 1995 for lumbar strain]). The ALJ explicitly considered the VA disability rating and plaintiff fails to explain how his one-time rating of 10% disability suggests an inability to perform medium work as the ALJ found. Although plaintiff's disability rating was ultimately

9

increased to 100% in 2007 (Tr. 140), plaintiff presents no evidence showing this rating somehow related back to his date last insured of December 31, 1986.

Next, plaintiff contends he "had questionable radiculopathy related to his low back and legs in 1984 on exam at the V.A. Hospital" and "it is hard to say that Mr. Horton could stand the 6-8 hours a day to perform medium work and lift the 25-50 pounds required to perform such work. . . ." (Doc. 20 at 4, citing Tr. 247-48).

Plaintiff fails to cite to any medical evidence in support of his argument that it was unlikely he could perform the standing and lifting requirements for medium work. Although plaintiff points to one medical record showing "questionable radiculopathy" in 1984, the ALJ reasonably determined that the clinical findings on physical examination prior to plaintiff's date last insured do not support a finding of radiculopathy. (Tr. 15). The April 1984 examination referenced by plaintiff showed plaintiff moved easily and had full range of motion; his gait was normal and he had 5/5 motor power in both legs; and he had negative straight leg raising. He was diagnosed with chronic low back pain and "questionable radiculopathy." (Tr. 248). The following month, plaintiff again had a normal gait and negative straight leg raising and was able to touch his toes. *Id.* An August 1984 examination revealed slight tenderness at L2-L4, "almost touches toes," a normal gait, and [illegible] straight leg raising.[3] The assessment was chronic low back pain without significant radiculopathy. (Tr. 247). Although a CT scan in May 1987, five months after plaintiff's insured status lapsed, documented degenerative disc disease (Tr. 240), a subsequent myelogram in 1988 confirmed that the disc protrusion at L5-S1 did not affect the S1 nerve root (Tr. 245) and plaintiff did not seek any further treatment for back until five years later

---

[3]The ALJ interprets the straight leg raising test as "negative" (Tr. 14), while plaintiff interprets the test as "positive." (Doc. 20 at 2).

10

in 1993. (Tr. 235-36). Taking the record as a whole, the ALJ reasonably determined that plaintiff retained the RFC to perform medium work despite his impairments and his decision is supported by substantial evidence.

### 3. The ALJ's vocational decision is supported by substantial evidence.

Plaintiff's past relevant work for the relevant time period was as a kitchen aid at a nursing home. (Tr. 15). As plaintiff described it, this job required walking for two hours, sitting for six hours, and carrying less than ten pounds. (Tr. 15, 155-56). Plaintiff argues the ALJ erred by not eliciting the services of a vocational expert in determining that plaintiff could perform his past relevant work as a kitchen aid. Plaintiff asserts that he "would have had problems walking for two hours a day by 1986 on this job due to his low back and leg pain" and would need to alternate between sitting and standing. (Doc. 20 at 4). Plaintiff contends that vocational testimony was required to determine whether plaintiff "could do this past work with the two hours of walking required on this job." (Doc. 20 at 5).

As explained above, the ALJ's RFC finding for medium work is substantially supported by the record. Medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday, frequent lifting or carrying objects weighing up to 25 pounds, and sitting intermittently during the remaining time. *See* SSR 83-10, 1983 WL 31251. *See also* 20 C.F.R. § 404.1567. As such, the ALJ reasonably determined that plaintiff retained the RFC to perform his past relevant work as a kitchen aid because the exertional requirements for that job did not exceed those for medium work. There was no need for vocational expert testimony on plaintiff's past work as a kitchen aid because the ALJ accepted plaintiff's description of the job as he performed it and reasonably determined he could still

11

perform this job. To the extent plaintiff argues he would be unable to perform the amount of walking required for that job, he has failed to develop this argument, either factually or legally. Plaintiff's conclusory allegation that he would be unable to perform the two hours of walking required for the kitchen aid job prior to December 31, 1986, the date his insured status expired, is insufficient to show the ALJ erred in his Step 4 finding.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 3/15/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONALD HORTON,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:11-cv-090
Spiegel, J.
Litkovitz, M.J.

NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).